IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) |
| *Plaintiff*, | ) |
| v. | ) Case No. 7:19cv181-EKD |
| 0.15 ACRES OF LAND, OWNED BY FRANK W. HALE, FLOSSIE I. HALE, ROBERT MATTHEW HAMM and AIMEE CHASE HAMM | ) |
| *Defendants*. | ) |

**MOTION FOR A STAY OR, IN THE ALTERNATIVE,
MOTION FOR A CONTINUANCE**

Robert Matthew and Aimee Chase Hamm ("Hamms") are currently scheduled for a Motion for Summary Judgment Hearing on January 9, 2020, and a Jury Trial on January 30th & 31st, 2020. In accordance with the reasons stated below, the Hamms move for a Stay of these proceedings or, in the alternative, a Continuance of these proceedings.

*Constitutional Case*

The Hamms are Plaintiffs in the pending litigation of *Bohon, et.al. v. FERC, et.al.,* 1:20-cv-00006-JEB (D.C. Jan. 2, 2020), *See Exhibit A*, which is a facial constitutional challenge to certain provisions of the Natural Gas Act ("NGA"). In summary, the Hamms are asking the Court for a declaratory judgment to declare that Congress' overly broad delegation of legislative powers to FERC was and is facially unconstitutional; that any delegation of eminent domain power to any and all private actors, including Mountain Valley Pipeline ("MVP"), is facially unconstitutional;

1

that FERC has no authority to issue certificates to applicants seeking to invoke the power of eminent domain to take property; and, that all such certificates are void *ab initio*.

At the heart of this case is the *Federal Non-Delegation Doctrine* which stands for the proposition that Congress cannot delegate its legislative power to the executive branch *without* constitutionally adequate limitations. The year 2019 marked a resurgence of the *Federal Non-Delegation Doctrine* after 84 years of dormancy. In *Gundy v. United States*, 139 S.Ct. 2116 (2019), four Justices acknowledged the validity of the *Federal Non-Delegation Doctrine* but upheld the delegation in that case under the "intelligible principle" test. Three dissenting Justices also acknowledged the *Federal Non-Delegation Doctrine*, but held the intelligible principle test to be constitutionally infirm. Those Justices would not only apply the *Federal Non-Delegation Doctrine*, but would impose an even stricter test than the intelligible principle.

Because the ninth Justice, Justice Kavanaugh, did not take part in the decision, Justice Alito in a concurring opinion also applied the intelligible principle test, but stated he would support revisiting the intelligible test in a future case with a full Court. ("If a majority of this Court were willing to reconsider the approach we have taken for the past 84 years, **I would support that effort**.") (Alito, J., concurring) (**emphasis added**).

On November 25, 2019, while *certiorari* was denied in *United States v. Paul,* 589 U.S. ___, Justice Kavanaugh took the opportunity to file a Statement on the record. While Justice Kavanaugh agreed with the denial of *certiorari* on this particular case, he opined: "I write separately because Justice Gorsuch's scholarly analysis of the Constitution's nondelegation doctrine in his *Gundy* dissent may warrant *further* consideration in future cases." *See Exhibit B, Statement of Justice Kavanaugh respecting the denial of certiorari.*

Accordingly, not only has the entire Court recently recognized the existence and validity of the *Federal Non-Delegation Doctrine,* a majority of the Supreme Court Justices now seem poised to put teeth in the *Doctrine's* intelligible principle test which would reign in Congressional delegations of power to regulatory agencies such as FERC. As set forth in the *Bohon* Complaint, because this is a facial constitutional challenge, such a ruling would invalidate the MVP's eminent domain action against the Hamms.[1]

The eminent domain cases before this Court are proving to be an important battleground on what it means for a Citizen to own private property under the Fifth Amendment. As to the delegation authority, "[w]hen it comes to private entities, however, there is not even a fig leaf of constitutional justification. Private entities are not vested with 'legislative Powers.'") (*Gundy, supra, Alito, J., concurring*). The Supreme Court is poised to force Congress to publicly consider such unpopular decisions and to halt delegation decisions by way of a revolving door bureaucracy with those purportedly regulated, yet are not held accountable to the electorate.

Matthew and Aimee Hamm wish to occupy the land they own to live in peace and raise a family. To do so, they have availed themselves of a constitutional challenge that, by all objective standards, is viable. If their eminent domain case is not stayed until resolution of this action, their standing in the constitutional case could potentially be affected and their rights as Citizens for protection under the Constitution denied.

### *Other Pending Matters Relevant For Consideration For A Stay*

<u>Virginia Supreme Court Case Regarding Survey Statute</u>:

Landowner Fred W. Vest appealed the Roanoke Circuit Court granting of Summary Judgment in favor of MVP in litigation involving the validity of the state survey statute, which

---

[1] We believe the Hamms would be successful in their constitutional challenge under the intelligible principle test or the stricter separation of powers test proposed by the *Gundy* dissent.

was employed by MVP as a basis for all the eminent domain cases before this Court. *See Exhibit C*. On December 19, 2019, the Virginia Supreme Court granted the Writ and will hear the appeal. *See Exhibit D*.

If Mr. Vest is successful, the Supreme Court's decision could invalidate all the surveys which were the cornerstone of this Court's Early Entry Order. If the Hamms are forced to resolve their case prior to this decision, it could affect their standing for relief.[2]

*Invalid United States Fish and Wildlife Service's Biological Opinion and Incidental Take Statement*:

On August 21, 2019, several citizen groups filed an action against the Department of Interior and others seeking to stay the United States Fish and Wildlife Service's ("FWS") Biological Opinion and Incidental Take Statements for MVP – which are government approvals required for construction along wide areas of the proposed route. *Wild Virginia, et.al. v. United States Department of Interior, et.al.,* No. 19-1866 (4th Cir. Aug. 21, 2019). On October 11, 2019, the Fourth Circuit granted the Stay and placed the case in abeyance until January 11, 2020. *See Exhibit E*. On October 15, 2019, FERC issued a stop work order for the affected areas.[3] There is continuing evidence that MVP's earth disturbing activities have violated both the spirit and the letter of the Fourth Circuit's Stay and FERC's Stop Work Order.[4]

The Hamms' property is within the Mill Creek watershed on Bent Mountain, is identified as an area in the FERC Stop Work Order and will be affected by this litigation.

---

[2] Fred Vest is Aimee Hamm's father. Mr. Vest deeded a portion of his land to Ms. Hamm in 2004 and their property is contiguous. The road at issue in Ms. Hamm's eminent domain suit is the same road that leads less than ½ mile away to Mr. Vest's house.
[3] https://elibrary.ferc.gov/idmws/common/opennat.asp?fileID=15380529 , (Accession No. 20191015-3030).
[4] https://elibrary.ferc.gov/idmws/common/opennat.asp?fileID=15399612 , (Accession No. 20191105-5127); http://elibrary.ferc.gov/idmws/file_list.asp?accession_num=20191203-5113 .

4

*Nationwide 12 Stream Crossing Permit*:

For construction through streams, wetlands and other waterbodies, MVP is required to obtain a United States Army Corps of Engineers ("USACE") Nationwide Permit, which requires a certification under Section 401 of the Clean Water Act, setting forth standards for construction, erosion/sediment control and water quality. The Fourth Circuit Court of Appeals vacated the 401 Certification in the USACE Districts in West Virginia. *Sierra Club v. Army Corps of Engineers*, 909 F.3d 635 (4th Cir. 2018). Responding to the Court's decision over a year ago, on October 5, 2018, the USACE suspended construction through 383 stream crossings and 142 wetland crossings in Virginia. *See Exhibit F*. This suspension is still in effect.

*Appalachian Trail/National Forest*:

On December 13, 2018, in a unanimous decision, the Fourth Circuit ruled the Department of Interior lacks the authority to grant interstate pipelines like MVP a right-of-way across National Forest intersected by the Appalachian Trail. *Cowpasture River Preservation Association v. Forest Service*, 911 F.3d 150 (4th Cir. 2018).

On June 25, 2019, the Atlantic Coast Pipeline ("ACP") filed a Petition for *Certiorari* with the Supreme Court. Because the Fourth Circuit decision "directly affect[s]" MVP's construction, MVP filed an *amicus* brief in support of ACP's Petition.[5] According to ACP, the Fourth Circuit decision is "entirely definitive" of their FERC approved routes.[6] MVP specifically asserted that, absent *certiorari*, it will have to "restart the federal approvals process, guaranteeing additional years of delay and uncertainty."[7]

---

[5] *Atlantic Coast Pipeline v. Cowpasture River Association,* Case No. 18-1584, Petition of *Amicus Curiae* Mountain Valley Pipeline Supporting Petitioners at 3 – 4 (July 26, 2019), available at https://bit.ly/2n5TU6j.
[6] https://bit.ly/2nZIRfB .
[7] *See note 5, supra.*

5

If MVP is to comply with the *Cowpasture* decision, it could directly affect the route over Bent Mountain. Some earlier alternative routes which might comply with *Cowpasture* lay south of Bent Mountain. To the larger point, if MVP cannot build in such a large area as impacted by *Cowpasture*, it is reasonable to assume it cannot build at all. A Stay of this litigation pending the Supreme Court decision would protect the Hamms' constitutional rights.

*Public Need*:

Public need is the core constitutional requirement for the taking of private property in eminent domain. MVP "created" public need by entering "precedent agreements", which are shipping contracts with affiliates – in other words, creating a "public need" by agreeing to sell to yourself.

In February 2014, former FERC Chair Norman Bay questioned the validity of precedent agreements as an indicator of public need. He thought public need should be measured by factors like present infrastructure, cost-benefit analysis, market competition, etc. *See Exhibit G*. Bay warned MVP's analysis would lead to overbuild, stranded assets and long term economic instability. In June 2018, FERC Commissioners Richard Glick and Cheryl LaFleur repeated Bay's concern that MVP had created public need relying solely on agreements with its own affiliates. LaFleur cited due process offenses by FERC for accepting precedent agreements alone while allowing MVP and its affiliates to keep documents embodying those agreements hidden from the public. *See Exhibit H.*

Recently the Virginia State Corporation Commission ("SCC") has taken up the issue of public need. There is a pending request by Roanoke Gas Company ("RGC") before the SCC to increase gas rates largely based on its relationship with MVP. Some proposed rates would increase by 300%.

28229/2/9158670v1

The SCC has not decided the issue, but has taken and made public the testimony of John A. Stevens, a Deputy Director in the SCC's Division of Public Utility Regulation. Stevens testified there is "little evidence" to support that demand for gas is growing at the rate reported by RGC, and there is "no immediate need to expand the size of the natural gas portfolio." *See Exhibit I.*

There is no known current litigation regarding public need, but the issue has taken on a new life.

<u>Virginia Attorney General Action</u>:

On December 11, 2019, MVP entered a Consent Order with the Virginia Attorney General resolving environmental violations under the Clean Water Act. MVP agreed to pay $2.15 million in civil penalties and be subjected to a compliance program and reporting requirements. *See Exhibit J.* While public comments derided the low-ball settlement as simply being a "pay to pollute" plan lacking supervisory teeth,[8] it does highlight the lack of quality of MVP's construction activities which have given rise to other issues raised in this pleading.

<u>Criminal Investigation</u>:

In a Securities & Exchange Commission filing earlier this year, one of the Pipeline's venturers confirmed that MVP is the subject of a criminal investigation for violations of the Clean Water Act "and other federal statutes as they relate to the construction of MVP."[9]

### Conclusion

As outlined above, MVP has severe legal and economic problems in completing its project. The Courts and regulators have essentially shut down construction for the foreseeable future. The

---

[8] https://elibrary.ferc.gov/idmws/file_list.asp?accession_num=20191202-5128 ; *See also Exhibit K.*
[9] EQM Midstream Partners, Annual Report pursuant to §13 or §15 of the Securities Exchange Act of 1934 (February 14, 2019), available at https://bit.ly/2oDP8Oa .

7

absence of true local and regional demographic evidence of public need has never been more glaringly exposed. MVP has admitted committing environmental offenses in an action by the Virginia Attorney General and is under criminal investigation by federal authorities. With support in the recent plain language of five Supreme Court Justices, MVP is a party to a lawsuit that legitimately attacks the constitutionality of the FERC certification giving rise to the entire project.

Matthew and Aimee Hamm are affected by all these actions. They are striving to save their property, and ultimately their children's property, from the encumbrance to MVP in perpetuity and thus are exercising their constitutional rights to have Courts decide the legitimacy of the taking. To deprive the Hamms of a Stay or, in the alternative, a Continuance, could potentially affect their standing in *Bohon* – an important case that raises constitutional concerns about private party eminent domain; and, in *Vest* – an attack on the surveying process specifically involving the road that is part of the case. All the other matters listed above at least indirectly affect the Hamms, and a failure to obtain a Stay could deprive them of the benefits of these actions.

The granting of a Stay is not prejudicial to MVP. The area where the Hamms reside is subject to a Stop Work Order and MVP is effectively hamstrung until it regains the necessary permits that the Courts and federal agencies have revoked, vacated or suspended. The truth remains that if MVP is "reinstated" as a legitimate holder of the required permits and approvals, it may engage in construction activities on the Hamms' property without the eminent domain case being resolved.

In accordance with the reasons stated above, the Hamms move for a Stay of these proceedings or, in the alternative, a Continuance until a date certain for a Status Conference to reassess the posture of the proceedings.

8

28229/2/9158670v1
Case 7:19-cv-00181-EKD-RSB   Document 22   Filed 01/06/20   Page 8 of 9   Pageid#: 215

Respectfully submitted,

ROBERT MATTHEW HAMM AND AIMEE CHASE HAMM

By: /s/*Thomas J. Bondurant, Jr.*
      Of Counsel

Thomas J. Bondurant, Jr. (VSB No. 18894)
GENTRY LOCKE
900 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
Fax: (540) 983-9400
bondurant@gentrylocke.com

Mia Yugo (VSB No. 92975)
GENTRY LOCKE
900 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
Fax: (540) 983-9400
yugo@gentrylocke.com

Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By: /s/*Thomas J. Bondurant, Jr.*
    Of Counsel

28229/2/9158670v1
Case 7:19-cv-00181-EKD-RSB   Document 22   Filed 01/06/20   Page 9 of 9   Pageid#: 216